IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| ED ROSE #431057 | § | |
| v. | § | CIVIL ACTION NO. 9:12cv196 |
| BRAD LIVINGSTON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Ed Rose, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). The named defendants are Brad Livingston, the Director of the Texas Department of Criminal Justice; Rick Thaler, the Director of the Institutional Division of TDCJ; and an unknown psychiatrist, identified as Dr. Patel.

In his complaint, Rose alleges as follows:

> [The] defendants, acting in concert and in participation with each other, are operating the facilities of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) wilfully, and with the knowledge that there exists a patent defect in the structural design of the apparatus that defendants refer to as a "ladder," which plaintiff, as well as other prisoners who receive upper-bunk assignments, are required to utilize in order to ascend to / descend from upper bunks, and such utilization of the said "ladder" by plaintiff and other prisoners has caused injuries and also puts plaintiff and other prisoners at serious risk of future injury and death.
>
> Further, defendants have been, and are currently assigning plaintiff to upper-level tiers and bunks, wilfully and with the knowledge that defendant John Doe, acting as plaintiff's physician, prescribes to plaintiff the drugs halperidol, divelpriex, and benztropine, containing properties which cause plaintiff to experience the side effects of drowsiness, dizziness, blurred and double vision, and these drugs also come with the warning to "use caution performing tasks requiring alertness." The side effects of these drugs have caused plaintiff to have at least one accident and several near accidents while ascending / descending to and from upper bunk assignments, yet defendants have failed to respond to request and a formal grievance to resolve this issue, in addition to making threats of retaliatory actions against plaintiff for seeking judicial review in order to obtain injunctive relief, thus leaving him without recourse except to refuse housing and bunk assignments that are a threat to his health and

1

safety, incur disciplinary sanctions, while attempting to resolve this matter pursuant to judicial processes.

Rose goes on to state, in his complaint and at an evidentiary hearing, that on November 5, 2012, he told Dr. Patel about these matters, including the fact that in 2006, his physician had assigned him to a lower bunk because of these same problems. Dr. Patel replied that although he prescribed medications and was ultimately responsible for ensuring housing and bunk assignments commensurate with Rose's health and safety, he would do nothing unless the medical department documented an actual injury. Dr. Patel stated that if he gave Rose a lower bunk / lower row assignment, he would have to do the same for all of his patients who were prescribed those drugs.

In response, Rose states that he accused Dr. Patel of "intentionally subjecting him to dangerous housing conditions" and told him that it sounded like there was a problem with funding and lack of space. Dr. Patel replied that Rose was correct about the lack of funding and space, and that he would continue to refuse Rose's request.

Rose then stated that he intended to seek "judicial review in order to obtain injunctive relief." Dr. Patel informed Rose that he would have Rose "involuntarily committed to a prison in-patient psychiatric facility" and that if Rose sought judicial review, he would be causing himself "a lot of trouble," which Rose interpreted to be a threat of retaliatory action.

At that point, Rose states that he terminated the interview, went to his housing area, packed his possessions, and refused all upper-bunk and upper-tier housing assignments. He was placed in pre-hearing detention pending disciplinary action for refusal to accept housing assignments. When he went to pre-hearing detention, he was placed on the second tier, but about 30 minutes later, security personnel moved him to the first floor, saying that the count room had informed them that Rose was "first-floor restricted." While they were taking him downstairs, he stumbled and would have fallen had the guards not been holding onto his arm.

Four days later, Rose states that a counsel substitute told him that a disciplinary case had been filed against him for refusing to accept a housing assignment. Rose told her that he was not refusing a housing assignment, but simply refusing upper bunk and upper tier assignments.

Rose testified that he talked to mental health workers named Hester and Munson about getting off the top bunk, but they told him "not on this unit." He sent a complaint to a person named Baca, whom he identifies as a "complaint coordinator," but received no reply.

Rose explained that the bunks have "two steps and a handle," which he says is inadequate and makes it treacherous to get to the top bunk. He reiterated that his psychiatric medication made him groggy and said that he has fallen on the stairs as well as on occasions when he was trying to get down from the top bunk.

When asked why he had sued Livingston and Thaler, Rose explained that he believed these officials were personally involved because "the unit administration won't do anything without acquiescence from higher-ups." He stated that Livingston and Thaler know that the bunks are dangerous because inmates are instructed to be careful. Rose asserted that there was "a structural defect, a patent defect."

Rose indicated that his shoulder had been hurt last May, but then stated that he was not injured, just "wrenched around." He argued that there is a "substantial risk of future harm."

Captain Miller, a TDCJ official also present at the evidentiary hearing, testified under oath that the medical department determined who received top bunk passes; however, Rose stated that when he asked Dr. Patel about this, the doctor said that he "did not get involved" but left that to the unit administration.

Karen Norman, a TDCJ grievance official, testified at the hearing that Rose had not filed a Step One or Step Two grievance regarding his claims. Rose argued that he did file a Step One grievance but had received no response, so he believed that he had exhausted his administrative remedies.

### The TDCJ Records

Rose's TDCJ records, offered into evidence at the hearing without objection, contain a health summary for classification (HS-18) form dated November 16, 2012, showing that as of that date, Rose has a lower bunk restriction. On December 10, 2012, however, a memorandum from Warden

Alford asks that Rose be placed in administrative segregation because in the past six months, he has received three disciplinary cases for staff assaults. Rose's classification records also contain numerous disciplinary cases which he has received for refusing housing. In one of these cases, no. 20130068523, Rose argued that he was refusing housing until he received a bottom bunk, and the medical department certified at that time that he had no restrictions.

Rose's medical records contain a clinic note concerning his interview with Dr. Patel on November 5, 2012. In this interview, Rose stated that he took cogentin, but that it was not effective because he still had tremors. He also takes Seroquel and Wellbutrim with Klonapine, as well as Depakote.[1]

Rose stated in the interview that he was concerned about sedation from the Depakote because he is climbing stairs and assigned to the top bunk. He said that he did not want to take a "split dose" of medication and that if he had to "refuse housing to make his point, he would." Rose described himself as depressed but denied hearing voices or feeling paranoid. He expressed the desire to sue, but said that "I don't want to hurt myself or the others" and agreed to take the cogentin as directed.

Dr. Patel described Rose as "alert and ambulatory" and said that he, the doctor, did not see any tremors or acute or late side effects of Haldol, an anti-psychotic medication. There were no depressive, manic, psychotic, or anxiety symptoms evident, and Dr. Patel told Rose that there was no indication for treatment with Seroquel, Wellbutrin, or Klonopin/. Dr. Patel also told Rose to take his medications as prescribed and explained his diagnosis, treatment, alternatives, and management of side effects; no sedation or changes in blood pressure readings had been noticed and there was no indication that a bottom row or bottom bunk was necessary. Dr. Patel stated that Rose would be referred to the medical department for cholesterol treatment and for evaluation for bottom row and bottom bunk, as these were not indicated for mental health reasons.

---

[1] Cogentin is used to treat involuntary movements, as for example in Parkinson's disease or side effects of certain psychotropic drugs. Seroquel is an anti-depressant also used to treat bipolar disorder. Wellbutrin is an anti-depressant also used to treat seasonal affective disorder. Klonopin is an anti-anxiety medication. Depakote is an anti-seizure medication.

Prior to this visit with Dr. Patel, Rose submitted a request reading as follows:

> Please be advised that I received notification from you that I was scheduled to be seen by the psychiatrist on 10/22/12 but, as a reason of the lockdown, I am assuming, this appointment was rescheduled. Would you please advise me as to the date the appointment has been scheduled to?
>
> Also, be advised that I have been having problems with depression, and will be wanting to speak to the Dr. about prescribing a particular anti-depressant for me. One last thing, prior to the lockdown I had an accident while getting down from the top bunk while sedated on the Haldol or Depakote, and I'm concerned about climbing or descending the stairs while sedated. Thanks, have a nice day.

This is the only mention in Rose's medical records of a potential problem in getting in or out of the top bunk due to side effects of his psychiatric medication. Some six months earlier, on May 12, 2012, Rose submitted a sick call request stating that he had been hit in the temple on May 10 and was "having problems." On May 20, 2012, he submitted another sick call request, saying that he had a head injury in the left temple, which resulted in contusions, a knot, pain when moving his jaw, blurred or double vision, headaches, memory disturbances, slowness, drowsiness, and confusion. Rose was seen by Dr. Kasule on June 8, 2012, who ordered periodic checks of his blood pressure and blood sugar, X-rays of his facial bones, and an EKG.

On November 6, 2012, the day after he saw Dr. Patel, the medical records show that Rose was seen by the mental health department in 11 Building, where he had been moved after receiving a disciplinary case for refusing housing. He yelled at the mental health case worker, who noted that Rose was angry when he left his appointment the day before because the provider would not give him a bottom row / bottom bunk restriction. On November 16, a mental health outpatient clinic note states that after consultation with Captain Miller about Rose's medical issues and his many refusals to accept housing, he was ordered a bottom bunk and bottom row classification.

Legal Standards and Analysis

Rose's first claim is that Dr. Patel was deliberately indifferent to his serious medical needs by refusing to give him a bottom bunk and bottom row restriction. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d

286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should

have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Rose has not shown that Dr. Patel refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Instead, Rose simply states that he believed that he should have a bottom row and bottom bunk restriction, and the doctor did not agree with this assessment. Rose's brief and oblique reference to "an accident" in his sick call request, for which he gave no date and there appears no documentation in the medical records, does not show that the failure to provide him with a bottom row or bottom bunk restriction amounted to deliberate indifference to his serious medical needs; rather, Rose simply disagreed with Dr. Patel's assessment that such a restriction was not necessary. His claim on this point is without merit.

Rose also appears to claim that Dr. Patel retaliated against him. He says that when he told the doctor that he intended to seek judicial review, Dr. Patel threatened to have him "involuntarily committed to a prison in-patient psychiatric facility" and told that if Rose sought judicial review, he would be causing himself "a lot of trouble." He does not state that any retaliatory action was actually taken against him; in fact, the medical records reflect that Rose's classification was changed less than two weeks later to provide him with the restrictions that he wanted.

The Fifth Circuit has held that threats made in retaliation for efforts to utilize the courts or the grievance procedures may violate the Constitution only when the threats or threatening conduct result in a constitutional deprivation. *See* Lamar v. Steele, 693 F.2d 559 (5th Cir. 1982), *reh. den. en banc* 698 F.2d 1286 (5th Cir. 1983). Rose has not shown that the threat by Dr. Patel itself resulted in a constitutional violation. His claim on this point is without merit.

The other major claim raised by Rose is his assertion that there is "a patent defect in the structural design of the apparatus that defendants refer to as a ladder." He acknowledges that there are "two steps and a handle" to reach a bunk which is approximately five feet off the floor, and does not identify a structural defect other than his own belief that the ladder is unsafe.

The courts have held that the Constitution does not require that top bunks be provided with ladders. *See, e.g.*, Grant v. Aubrey Cole Law Enforcement Center, civil action no. 1:09cv772, 2012 WL 3112060 (E.D.Tex., June 26, 2012, *Report adopted at* 2012 WL 3115036 (E.D.Tex., July 31, 2012, no appeal taken) (stating that "the Constitution does not require ladders for bunk beds"); Hawthorne v. Cain, civil action no. 10-0528, 2011 WL 2973690 (M.D.La., June 8, 2011, *Report adopted at* 2011 WL 2941308 (M.D.La., July 21, 2011, no appeal taken) (failure of prison officials to equip the bunk with a ladder "simply does not amount to the deprivation of a minimal civilized measure of life's necessities"); Connolly v. County of Suffolk, 533 F.Supp.2d 236, 241 (D.Mass. 2008, no appeal taken) (same). In Armstrong v. Terrebone Parish Sheriff, civil action no. 06-573, 2006 WL 1968887 (E.D.La., June 6, 2006, no appeal taken), the Eastern District of Louisiana concluded that a swivel chair was a reasonable means by which an inmate could get into the top bunk, noting that "the Constitution requires neither ladders for bunk beds nor call boxes to remedy the fall experienced by the plaintiff."

Similarly, in the present case, Rose fails to show that the failure to provide a ladder consisting of more than two steps and a handle amounts to a constitutional violation. The Fifth Circuit has explained that the indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 346-7 (1981). However, any Eighth Amendment analysis must look to the evolving standards of decency that mark the progress of a maturing society, but cautioned that the standards are derived from objective factors. Rhodes, 452 U.S. at 346. In compliance with the Supreme Court's opinion, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience. Wilson, 878 F.2d at 849.

As stated above, the failure to provide a ladder consisting of more than two steps and a handle does not amount to the deprivation of the minimal standards of life's necessities. Nor has Rose shown that this failure amounts to deliberate indifference to his safety. *See* Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). His claim on this point is without merit .

Rose argues that the conditions create a risk of future harm. In Helling v. McKinney, 509 U.S. 25, 33 (1993), the Supreme Court stated that the Eighth Amendment protects against future harm to inmates. In order to prevail, the Supreme Court said, the plaintiff must show both the objective and subjective elements necessary to prove an Eighth Amendment violation. This requires a showing that the plaintiff himself is exposed to an unreasonable risk, and that this risk is so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. The subjective factor requires a showing that the defendants were deliberately indifferent to the plaintiff's safety.

In Helling, the claim revolved around exposure to second-hand tobacco smoke. With regard to the objective component, the Supreme Court stated that it was "plainly relevant to this determination" that the plaintiff had been transferred to another prison and was no longer the cellmate of a five-pack-a-day smoker. The Supreme Court added that the subjective factor "should be determined in light of the prison authorities' current attitudes and conduct, which may have changed considerably since the judgment of the court of appeals."

In the present case, the records show and Rose does not dispute that some two weeks after his meeting with Dr. Patel, he received the restrictions that he wanted. Like the fact that the plaintiff in Helling was no longer exposed to the same levels of tobacco smoke, the fact that Rose now has restrictions against being assigned to a top bunk is "plainly relevant" to consideration of the objective component.

With regard to the subjective factor, as set out above, Rose has manifestly failed to show that he was the victim of deliberate indifference to his safety. His medical records contain no complaints

about sedation relating to a top bunk assignment until immediately before his meeting with Dr. Patel, nor do these records show that he suffered any injury which is traceable to this cause. Furthermore, Rose has offered nothing to show that the risk of which he complains is so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. His claim that he was exposed to conditions creating a significant risk of future harm is without merit; the fact that the Director of TDCJ and the Director of the Correctional Institutions Division of TDCJ did not provide ladders which Rose considered adequate does not amount to a constitutional violation.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Rose's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, this lawsuit may be dismissed under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that the Clerk shall send a copy of this order to the Administrator of the Strikes List for the Eastern District of Texas. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **6** day of **March, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE